Karol KREYMER, Appellant,

v.

NORTH TEXAS MUNICIPAL WATER DISTRICT, Appellee.

No. 05-91-01233-CV.

Court of Appeals of Texas, Dallas.

Nov. 2, 1992.

Richard K. Laurin, Jr., Eddie Vassalo, Law Office of Eddie Vassallo, P.C., Dallas, for appellant.

Lewis L. Issacks, Gary & McCall, Inc., Plano, for appellee.

Before BAKER, KAPLAN and WIGGINS, JJ.

OPINION

BAKER, Justice.

This is a condemnation case. Karol Kreymer appeals from a judgment entered on the jury verdict awarding her substantially less damages than she wanted. Appellant contends that the trial court abused its discretion in permitting an expert witness to testify to certain opinions that the District had not timely disclosed. She contends that the trial court abused its discretion in overruling her motions for continuance, mistrial, and new trial. Appellant also contends that the jury's verdict was against the great weight and preponderance of the evidence. We affirm.

## THE CONDEMNATION LITIGATION

The District brought the suit to obtain a twenty-foot permanent easement across appellant's land for a three-foot water transmission line. The District also sought a sixty-foot-wide strip for a temporary construction easement. The court-appointed commissioners determined that appellant suffered damages of $45,000. Both appellant and the District filed objections to the commissioners' award. The District deposited $45,000 into the court's registry to take possession of the condemned property. The trial court released the $45,000 to appellant. A jury determined that appellant suffered damages of $2666. The trial court rendered judgment for the District against appellant for $42,334.

## THE EXPERT WITNESS'S TESTIMONY

In her first four points of error, appellant complains of the trial court's permitting Lee Freese, an engineering expert, to answer certain questions. Both sides designated Freese as an expert witness. In answers to interrogatories, appellant stated that she would call Freese to "testify as to the engineering that was performed in connection with the Water District's project as it affects the subject property and the property surrounding the subject property." The District stated that it would call Freese to testify "along the lines that were previously provided to the court in the *Eubanks* matter," a connected case.

Appellant also designated Richard Ferrara as an "Architect/Planner" expert witness. The District took Ferrara's deposition ten days before trial. During that deposition, the District for the first time learned of Ferrara's opinion about the increased cost of development that appellant would incur because of the placement of the water transmission pipe. Appellant had not disclosed Ferrara's opinions in her answers to the District's interrogatories.

Four days before trial, the District disclosed to appellant that it intended to have Freese testify in rebuttal to Ferrara's newly disclosed opinions. The next day, three days before trial, the District disclosed what Freese's rebuttal opinions would be. Appellant moved for a continuance and to strike Freese's testimony on these newly disclosed opinions. The trial court overruled appellant's motions. The case went to trial.

During her case in chief, appellant called Freese to testify. Freese testified that the total outside diameter of the pipeline including its pad and protective coatings was about four feet. He stated that the District buried the pipe between five-and-a-half and six-and-a-half feet deep measuring from the top of the ground to the top of the pipe. The pipeline, according to Freese, would pump fifteen million to thirty-five million gallons of water per day at a pressure of about sixty-seven pounds per square inch. Although it is unlikely that the pipeline would break, Freese said, ruptures of water transmission lines do occur in two instances: "somebody digs into it, some kind of construction activity digs into the pipeline and breaks it, ... [or] if you have corrosion in the ground around it, it could rust out and start leaking."

On cross-examination by the District, Freese testified as follows:

Q. Let me ask you, sir, in the design of this pipeline, if there is an attempt to place this transmission line at a minimum depth on all the properties?

A. Yes. Nowhere from one end to the other of the pipeline is it any shallower than four feet. That's the minimum depth.

Q. Why is it in the design of that pipeline that you have a minimum of four feet of ground cover over the top of the pipeline?

A. Because this pipeline is three-and-a-half to four feet in diameter. It's an underground barrier. We wanted to leave enough space such that normal—other utilities could cross over the top of it without having to go under it.

Q. What would those other normal utilities be?

A. Water lines or—any kind of electric or telephone cable; that sort of thing.

When the District then asked Freese about whether the slope of the land would affect the location of a sewer system, appellant objected to the relevance of the question and to the fact "that [Freese] was called on Direct Examination only to the extent of testifying to the specifications of this particular line. As to what other developments could be done on this property or what other easements might be placed on the property goes beyond the—my Direct Examination." The trial court overruled appellant's objection.

Freese then testified that the slope of the land and the location of the water transmission line would not affect the placement of a sewer line. Over appellant's objection, Freese further testified that he was the engineer in charge of the project. He stated the five-and-a-half to six-and-a-half feet of ground cover over the top of the water transmission line provided enough space to install other utility lines above it. These lines could be buried as close as six inches from the water transmission line.

### DESIGNATION OF EXPERTS AND CROSS-EXAMINATION

#### A. The Applicable Law

■ The trial court has broad discretion about the extent of cross-examination allowed. *Texas Employers' Ins. Ass'n v. Garza,* 557 S.W.2d 843, 845 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present a proper case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *City of Dallas v. Cox,* 793 S.W.2d 701, 706 (Tex.App.— Dallas 1990, no writ). Stated otherwise, we determine whether the trial court's act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984); *Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 222 (Tex. App.—Dallas 1989, writ denied).

Because a trial court decided a matter within its discretionary authority in a way different from that in which an appellate court might rule under similar circumstances does not show that the trial court abused its discretion. *Southwestern Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965); *Tate,* 767 S.W.2d at 222.

■ Rule 166b(6) of the Texas Rules of Civil Procedure requires a party to supplement its discovery responses, including responses to inquiries regarding the identity of the expert or the subject matter of the expert's testimony, as soon as practicable but in no event less than thirty days before trial. TEX.R.CIV.P. 166b(6)(b). If a party does not supplement its response, then the trial court must exclude the testimony unless the party affirmatively establishes good cause for the failure to supplement. TEX.R.CIV.P. 215(5); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 (Tex. 1989); *see Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990) (per curiam).

#### B. Appellant's Suggested Rules

The parties have not cited any cases where both parties designated the same expert. At oral argument, appellant suggested that either party's examination of the witness, whether on direct or cross-examination, must fall within the scope of

that party's designation of testimony. Failing that, appellant argued that the trial court should limit the scope of cross-examination to the scope of the direct examination. We disagree with both interpretations of the rules.

### C. Discussion of Policy

■ If we accepted appellant's argument that an expert's opinions on cross-examination must fall within the examining party's designated testimony, then we deny cross-examination rights to the party who had designated that expert for a different subject. Under appellant's argument, if only one party designated the witness, then the other party could not extract any opinions from the witness, even if those opinions were the same as those expressed on direct examination. We refuse to deprive parties of the right of cross-examination. As for appellant's argument that we should limit cross-examination to the scope of direct examination, such a rule would be in direct contravention of the long-standing tradition in Texas of unlimited cross-examination. *See* TEX.R.CIV.EVID. 611(b); *Wentworth v. Crawford*, 11 Tex. 127, 133 (1853); *Grocers Supply Co. v. Stuckey*, 152 S.W.2d 911, 915 (Tex.Civ.App.—Galveston 1941, writ ref'd); 1 Roy R. Ray, LAW OF EVIDENCE § 600 (Texas Practice 1980).

### D. The Better Rule

The better rule is to require that the scope of the cross-examination fall within the designation of the testimony by either party. If a party has designated that the witness will testify on particular subjects, then the trial court should permit the other side to cross-examine the witness about those subjects regardless of whether the witness testified to them on direct examination. Only if the scope of the cross-examination exceeds the designation of the expert's testimony should the trial court require the cross-examining party to show good cause or risk having the scope of cross-examination limited under rule 215(5). TEX.R.CIV.P. 215(5). If the scope of the cross-examination falls within the scope of the cross-examining party's designation, then the testimony is still admissible on cross-examination.

This interpretation of the rules of procedure and evidence preserves the direct-examining party's right not to have the witness testify beyond the scope of either party's designation, and it preserves the cross-examining party's right to examine a witness "on any matter relevant to any issue in the case, including credibility." TEX.R.CIV.EVID. 611(b).

### E. Conclusion

■ Appellant designated the scope of Freese's testimony as "the engineering that was performed in connection with the Water District's project as it affects the subject property and the property surrounding the subject property." Freese's testimony on cross-examination that appellant could bury utility lines above the water transmission line was consistent with appellant's designation of Freese's testimony. The objected-to cross-examination questions about the feasibility of running sewer lines over the water transmission line and through the property fell within the scope of the testimony designated by appellant. Furthermore, Freese's testimony that utilities could be placed over the water transmission line without disturbing it was relevant to his testimony on direct examination that ruptures in water transmission lines can occur during construction activities. The trial court did not err in overruling appellant's objections to the testimony or the motions for continuance, mistrial, and new trial. We overrule appellant's points of error one through four.

### SUFFICIENCY OF THE EVIDENCE

In the fifth point of error, appellant contends that the evidence is insufficient. At oral argument, appellant's counsel conceded that the evidence is sufficient. We agree. We overrule appellant's fifth point of error.

We affirm the trial court's judgment.