DOUBLE DIAMOND–DELAWARE, INC., Double Diamond, Inc., White Bluff Club Corporation, National Resort Management Company, R. Michael Ward, Fred Curran, and White Bluff Property Owners Association, Inc., Appellants,

v.

Jeanette ALFONSO, Eugenio Corpus, Fe Huevos, Elezar Nuique, Editha and Reynaldo Pepito, Simonette and Julito Pepito, Cherry Somosot, and Nelia Vicente, Appellees.

NUMBER 13–14–00324–CV

Court of Appeals of Texas, Corpus Christi–Edinburg.

Delivered and filed January 14, 2016

Rehearing Denied March 1, 2016.

Reconsideration En Banc Denied March 28, 2016

Brandy Wingate Voss, Smith Law Group, P.C., McAllen, TX, Richard A. Sayles, Sayles & Werbner, Dallas, TX, for Appellants.

F. Leighton Durham III, Kirk L. Pittard, Thad D. Spalding, Kelly, Durham & Pittard, LLP, Dallas, TX, for Appellees.

Before Justices Rodriguez, Garza, and Longoria

## OPINION

Opinion by Justice Rodriguez

Appellants Double Diamond–Delaware, Inc., Double Diamond, Inc., White Bluff Club Corporation, National Resort Management Company, R. Michael Ward, Fred Curran, and White Bluff Property Owners Association, Inc. (WBPOA) (collectively, Double Diamond) appeal from the trial court's rulings (a) denying their motion to transfer venue, and (b) granting a partial summary judgment in favor of appellees Jeanette Alfonso, Eugenio Corpus, Fe Fluevos, Elezar Nuique, Editha and Reynaldo Pepito, Simonette and Julito Pepito, Cherry Somosot, and Nelia Vicente (collectively, trial plaintiffs). Double Diamond raises three issues on appeal, contending that the trial court erred by: (1) denying its motion to transfer venue to Dallas County; (2) denying its motion for partial summary judgment and granting the trial plaintiffs' partial motion for summary judgment; and (3) ordering disgorgement of previously received assessments. We reverse and remand.

## I. BACKGROUND

In 1990, Double Diamond began development of the White Bluff Resort (White Bluff) at Lake Whitney in Hill County, Texas. According to the affidavit of Mike Ward, White Bluff is comprised of approximately 6,300 platted lots owned by more than 5,000 property owners.[1] Each individual who purchases a lot is required to become a member of the WBPOA and is charged mandatory semi-annual assessments. Included in the assessments are charges for maintaining the two golf courses at White Bluff and charges or "credits" for the food and beverage program (hospitality program).[2] Though the WBPOA charges the property owners for the golf-course maintenance and subsidizes the hospitality program, it receives no revenue from either because the golf courses and restaurants are wholly owned by Dou-

---

1. Mike Ward is the owner of more than a 90% interest in both Double Diamond, Inc. and Double Diamond–Delaware, Inc.

2. The food and beverage program requires property owners to pay an assessment supporting the "hospitality services" at White Bluff, and the property owners then receive credits to use at the resort facilities that are greater than or equal to the amount assessed.

ble Diamond, either directly or through subsidiary companies.

In 2009, a group of property owners filed a federal class-action lawsuit against Double Diamond in the Northern District of Texas, alleging, among other things, violations of the Racketeer Influenced and Corrupt Organizations Act, commonly referred to as RICO. The federal district court for the Northern District of Texas refused to certify the class. Subsequently, approximately 800 property owners filed suit against Double Diamond in Dallas County and approximately 100 property owners filed suit against Double Diamond in Hidalgo County.[3] The claims are similar, if not the same, in both suits, and the Hidalgo County plaintiffs and the Dallas County plaintiffs are represented by the same counsel. Specifically, in the Hidalgo County litigation, the property owners alleged that Double Diamond made numerous misrepresentations to prospective purchasers and failed to disclose that Double Diamond utilizes control over the WBPOA to cause the association to act in favor of Double Diamond. They further alleged that members of the WBPOA board of directors breached fiduciary duties owed to property owners. The property owners also brought suit under the Texas Deceptive Trade Practices Act, alleging that Double Diamond committed fraud in a real estate transaction and made untrue representations of fact to induce them to purchase property at White Bluff and, in the alternative, that Double Diamond was liable for negligent misrepresentation regarding property ownership at White Bluff and the dues and obligations of the WBPOA. The property owners also pleaded a right of recovery under the equitable theory of unjust enrichment and sought a constructive trust and disgorgement of all monies paid to Double Diamond. Finally, the property owners requested declaratory relief from the trial court that "the WBPOA fees and assessments, including the food and beverage fee, are illegal because they do not comport with nonprofit law, the IRS code governing non-profits, and restrictive covenant common law." In sum, as both parties set out, the claims generally arose from alleged misrepresentations and failure to disclose the relationships between the defendants and the use of assessments collected by the WBPOA.

After the one hundred property owners filed the Hidalgo County litigation in cause number C–2259–11–F, Double Diamond filed a motion to transfer venue from Hidalgo County to Dallas County. By agreement, at the hearing on Double Diamond's motion to transfer venue, the argument was limited to the thirty-one plaintiffs in the Hidalgo County litigation who were residents of Hidalgo County (collectively, the resident plaintiffs). After the hearing, the trial court denied Double Diamond's motion to transfer venue as to the resident plaintiffs.[4] After ruling on the motion to transfer venue as to the resident plaintiffs, the trial court designated ten of the resident plaintiffs as the "trial plaintiffs," who were to engage in discovery and proceed to trial. The trial plaintiffs are the appellees before this Court.

Both sides filed for partial summary judgment on the trial plaintiffs' claims for declaratory relief. On April 22, 2015, the

---

3. Thirty-one of the plaintiffs in the Hidalgo County litigation are residents of Hidalgo County.

4. There has not been a joinder ruling or a ruling on Double Diamond's motion to transfer venue as to the approximately seventy remaining plaintiffs in the Hidalgo County litigation. See Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a) (West, Westlaw through 2015 R.S.).

trial court granted the trial plaintiffs' motion and denied Double Diamond's motion without specifying the basis for its ruling. As part of its order, the trial court also ordered disgorgement of monies paid by the trial plaintiffs to Double Diamond for the "amenity assessment." After granting the trial plaintiffs' partial summary judgment, the trial court entered an order instructing the clerk "to sever the claims resolved in th[e] [c]ourt's April 22, 2015 Order Granting Plaintiffs' Motion for Partial Summary Judgment into a separate cause" number, C–2259–11–F(1). The trial court further ordered that the remaining claims in cause number C–2259–11–F be abated pending the resolution of any appeal. On May 13, 2014, the trial court entered a final judgment in cause number C–2259–11–F(1) into which it subsumed the April 22 order "with the intention that this Final Judgment shall be the final order and judgment of the [c]ourt with respect to the subject matter addressed in the [c]ourt's [April 22] Order." Double Diamond appeals from this final judgment.

## II. Venue

By its first issue, Double Diamond contends that the trial court erred in denying its motion to transfer venue to Dallas County. Specifically, Double Diamond asserts that (a) the trial plaintiffs did not submit competent evidence to support venue in Hidalgo County, and (b) in the alternative, even if we do consider the trial plaintiffs' venue evidence, it does not support venue in Hidalgo County. The trial plaintiffs respond that they have submitted adequate prima facie proof to support venue in Hidalgo County pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1), which provides that venue is appropriate in the county where all or a substantial part of the events or omissions giving rise to the claim occurred. See Tex.

Civ. Prac. & Rem. Code Ann. 15.002(a)(1) (West, Westlaw through 2015 R.S.).

### A. Standard of Review

 "Because venue is a creature of legislative grace, the authority to transfer venue from one court to another is entirely statutory." *Bleeker v. Villarreal*, 941 S.W.2d 163, 167 (Tex.App.—Corpus Christi 1996, writ dism'd by agr.) (op. on reh'g) (citing *Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex.1995) (orig.proceeding) (per curiam)). Accordingly, our review of the trial court's venue ruling requires a limited determination of whether the trial court's ruling abides by the relevant venue statutes. *Id.* Even the scope of our review is specified by statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West, Westlaw through 2015 R.S.). Section 15.064(b) provides that "if venue was improper[,] it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits." *Id.* "If the record contains any probative evidence that venue was proper, even if the preponderance of the evidence is to the contrary, we must uphold the trial court's venue determination." *Bleeker*, 941 S.W.2d at 167 (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex.1995); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1994)). If there is no legally sufficient evidence that venue was proper, then the trial court's erroneous venue ruling requires automatic reversal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b); *Bleeker*, 941 S.W.2d at 167.

 Additionally, we evaluate the venue determination in light of all the evidence, even evidence that was not before the trial court when it made the venue ruling. *Bleeker*, 941 S.W.2d at 167 (citing *Ruiz*, 868 S.W.2d at 757); *see Moveforfree.com*,

*Inc. v. David Hetrick, Inc.,* 288 S.W.3d 539, 542 (Tex.App.—Houston [14th Dist.] 2009, no pet.); *Chiriboga v. State Farm Mut. Auto Ins. Co.,* 96 S.W.3d 673, 680–81 (Tex.App.—Austin 2003, no pet.); *compare* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (setting out that an appellate court considers "the entire record, including the trial on the merits") *with* Tex.R. Civ. P. 87.1, .3 (providing that a trial court's "determination must be made in a reasonable time prior to commencement of the trial" based on allegations in pleadings and "prima facie proof" presented at venue hearing). "[T]his unusual standard of review can result in an appellate court reversing a trial court's judgment based on a venue ruling that was correctly decided at the venue hearing." *Bleeker,* 941 S.W.2d at 167 (citing *Ruiz,* 868 S.W.2d at 757).

**B. Applicable Law**

 When venue may be proper in more than one county under general, mandatory, or permissive venue rules, the plaintiff is given the first choice of venue in the filing of the suit. *See GeoChem Tech Corp. v. Verseckes,* 962 S.W.2d 541, 544 (Tex.1998); *Nat'l Family Care Life Ins. Co. v. Fletcher,* 57 S.W.3d 662, 664 (Tex. App.—Beaumont 2001, pet. denied). A motion to transfer venue may be made by a defendant if "the county where the action is pending is not a proper county." Tex. R. Civ. P. 86. If the defendant challenges the plaintiff's venue choice, the burden falls on the plaintiff to prove that venue is maintainable in the county of suit. *See Verseckes,* 962 S.W.2d at 544; *Fletcher,* 57 S.W.3d at 664.

The general venue rule provides that, in the absence of another specific venue provision—mandatory or permissive—all lawsuits shall be brought:

(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2) in the county of the defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a).

Section 15.003 of the civil practice and remedies code requires that each plaintiff must establish proper venue independently of any other plaintiff. *See id.* § 15.003 (West, Westlaw through 2015 R.S.). Section 15.003 was enacted as part of the Texas Legislature's 1995 tort reform; it largely eliminated derivative-venue in the context of co-plaintiffs. *See id.;* William D. Underwood, *Reconsidering Derivative–Venue in Cases Involving Multiple Parties and Multiple Claims,* 56 Baylor L.Rev. 579, 645 (Spring 2004); *see also Polaris,* 892 S.W.2d at 862 (recognizing that section 15.003 "was added by the legislature in 1995 as a response to the recommendation of the supreme court in *Polaris* ... to eliminate forum shopping by plaintiffs with no connection to the forum who were permitted by the 1983 revisions to have tag-along or piggy-back venue based upon proper venue of only one plaintiff in the county of suit"). Therefore, pursuant to section 15.003(a), when proper venue cannot be established independently, the plaintiff may only establish derivative venue if he or she can independently satisfy, among other things, that joinder is proper under the rules of civil procedure.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).

In the context of a motion to transfer venue, Texas Rules of Civil Procedure 86, 87, and 88 lay out the procedural requirements by which a defendant can transfer venue.[5] *See* TEX. R. CIV. P. 86–88. Rule 87 provides the basic framework for determining a motion to transfer venue. *Id.* R. 87. Pursuant to rule 87, the plaintiff bears the burden to prove that venue is proper in the county where it filed suit, and the defendant has the burden to prove that venue is proper in the county to which a transfer is sought. *Id.* R. 87(2(a). Rule 87(3)(a) also specifies the proof required. *Id.* R. 87(3)(a). It states that the plaintiff's alleged venue facts shall be taken as true unless specifically denied by the defendant. *Id.* When the defendant specifically denies a venue fact, the plaintiff must make prima facie proof of that venue fact. *Id.* "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth facts supporting such pleading." *Id.* If a plaintiff produces prima facie proof in support of his or her choice of venue, the motion to transfer venue should be denied. *Id.*

## C. Discussion

The trial plaintiffs claim that venue is proper in Hidalgo County pursuant to the general venue provision found in section 15.002(a)(1) because they alleged that "a substantial part of events or omission giving rise to [their] claims occurred in Hidal-

go County, Texas." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1). Since Double Diamond challenged the trial plaintiff's venue choice, the burden was on the trial plaintiffs to prove that Hidalgo County is a county of proper venue. *See In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999) (orig.proceeding); *Fletcher*, 57 S.W.3d at 664–65. We look to the entire record to determine if there is evidence supporting venue in Hidalgo County for each individual trial plaintiff before us.[6]

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003. If the record contains any probative evidence supporting the trial plaintiffs' choice of venue, we must uphold the trial court's venue determination. *Bleeker*, 941 S.W.2d at 167. If the trial plaintiffs did not submit prima facie proof supporting their choice of venue, then the trial court's ruling requires automatic reversal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b); *Bleeker*, 941 S.W.2d at 167.

### 1. Double Diamond's Objections to Venue Evidence

In response to Double Diamond's motion to transfer venue, the trial plaintiffs filed their attorney's affidavit to which was attached the trial plaintiffs' discovery responses, their contracts for the purchase of the White Bluff property, communication between White Bluff and two plaintiffs not before this Court, financial information for White Bluff, and the applicable restrictive covenants controlling the WBPOA. Double Diamond objected and argued that the evidence was improper because: (1) the attorney's affidavit "attempt[ed] to merely authenticate the discovery responses and

---

5. In sum, rule 86 sets forth the guidelines for the filing of the motion itself, rule 87 relates how venue determinations are to be made, states the proof required, and places the burden of proof, and rule 88 identifies what may constitute proof in a venue dispute. *See* TEX. R. CIV. P. 86–88.

6. Because only the trial plaintiffs are before this Court, we do not analyze whether venue is appropriate as to the remaining twenty-one Hidalgo County resident plaintiffs whose claims remain pending in the trial court in a separate trial court cause number.

d[id] not purport to demonstrate personal knowledge of or testify to the truth of the matters in the responses"; (2) the verifications of the individual plaintiffs' discovery responses [were] defective because they d[id] not affirmatively state that they are based on personal knowledge rather than information and belief; and (3) the Texas Rules of Civil Procedure prohibit[ed] the offensive use of a party's own discovery response.

Initially, we note that rule of procedure 88 specifically allows the parties to use discovery as prima facie venue proof. *See* TEX. R. CIV. P. 88. Specifically, rule 88 permits that

> [d]eposition transcripts, responses to requests for admission, answers to interrogatories and other discovery products containing information relevant to a determination of proper venue may be considered by the court in making the venue determination when they are attached to, or incorporated by reference in, an affidavit of a party, a witness or an attorney who has knowledge of such discovery.

*Id.* Rule 88 provides that the requirement for an affidavit attaching discovery documents to be considered venue evidence is that it be made by an individual who has knowledge of the discovery. *See id.* Here, the trial plaintiffs' attorney's affidavit clearly stated that she had knowledge of the discovery being attached. Thus, Double Diamond's contention that the affidavit was improper because it "merely authenticate[s] the discovery responses" fails. *See id.*

Double Diamond also challenged the verifications that were attached to the trial plaintiffs' interrogatory answers.[7] *See* TEX. R. CIV. P. 197.2(d). Texas Rule of Civil Procedure 197.2(d) requires that an individual responding to interrogatories must sign the answers under oath. *Id.* In the venue context, Texas Rule of Civil Procedure 87.3(a) requires that venue facts be based on personal knowledge. *Id.* R. 87.3(a). Each of the verifications contained the following statement: "The facts set forth therein are within my personal knowledge or based on information and belief, and the answers and responses provided herein are within my personal knowledge and are true and correct."

Double Diamond takes exception to the disjunctive "or" which it claims indicates that facts contained in the response could be based only on the signatories' "information and belief." Double Diamond cites rules controlling the admissibility of summary judgment evidence for the position that the verifications are insufficient because they do not positively and unqualifiedly represent that the "facts" are true. *See, e.g.,* TEX. R. CIV. P. 166a(f). We note, however, that while the use of the disjunctive in the verification is confusing, the trial plaintiffs also clearly verified, using the conjunctive "and," that the answers and responses were within their personal knowledge and were true and correct. That language is sufficient to support the use of the trial plaintiffs' discovery responses as prima facie venue evidence. *See Id.* R. 87.3(a).

Finally, Double Diamond objected to the trial plaintiffs' use of their own discovery responses as venue evidence to support maintaining the suit in Hidalgo County, Texas. In support of its objection, Double Diamond cited rule of civil procedure 197.3, which provides that "[a]nswers to interrogatories may be used only against the responding party." *Id.* R.

---

7. We limit our review of Double Diamond's objections to the trial plaintiffs' verifications because, as noted above, the trial plaintiffs are the only plaintiffs before this Court.

197.3. While we agree that rule 197.3 provides the general rule for the use of interrogatory responses as evidence, we note that rule 88 does not provide any such limitation when it stipulates that discovery—including answers to interrogatories and responses to requests for admission—can be considered by the trial court in making its venue determination. *See id.* R. 88. In fact, rule 88 specifically allows for the use of a party's pleadings as venue evidence, which is also typically prohibited by the rules of civil procedure. *Id.* R. 88, 197.3. Double Diamond cites no cases, and we have found none, supporting its position that a party may not use its own discovery as venue evidence. In this case, we conclude that the specific provisions in rule 88 allow a party to use its own discovery responses in the context of a venue determination.

## 2. Prima Facie Venue Evidence Supporting Venue in Hidalgo County

In assessing venue under Texas Civil Practice and Remedies Code section 15.002(a), we analyze the whole record to determine whether the trial plaintiffs have put forth prima facie evidence showing that the acts or omissions at issue are materially connected to the trial plaintiffs' causes of action. *See Moveforfree.com,* 288 S.W.3d at 542; *Chiriboga,* 96 S.W.3d at 680–81; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1). Because the trial court did not make a joinder determination pursuant to section 15.003(a)(1–4), we will review each trial plaintiff's venue evidence separately to determine whether venue was proper as to each trial plaintiff. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a) (setting out that each plaintiff must independently establish proper venue and preventing plaintiffs from utilizing derivative venue without a joinder determination pursuant to the statute); *Am. Home Prods. Corp. v. Clark,* 38 S.W.3d 92,

95–97 (Tex.2000). We review the evidence in the light most favorable to the trial court's ruling and will affirm the trial court's ruling if there is probative evidence supporting venue in Hidalgo County. *See KW Constr. v. Stephens & Sons Concrete Contractors, Inc.,* 165 S.W.3d 874, 879 (Tex.App.—Texarkana 2005, pet. denied).

The trial plaintiffs alleged violations of the Texas Deceptive Trade Practices Act, fraud in a real estate transaction, common law fraud, fraudulent inducement, and negligent misrepresentation. The basis of the various causes of actions is the allegation that Double Diamond misrepresented and/or failed to disclose the nature and extent of the allegedly illegal assessments when inducing the trial plaintiffs to purchase property at White Bluff.

The third amended petition set out the following venue facts: (1) certain plaintiffs were Hidalgo County residents at the time the White Bluff properties were purchased; (2) Double Diamond targeted Hidalgo County residents through mailers sent to Hidalgo County inviting them to tour or asking them to refer friends and co-workers to tour the facilities; (3) Double Diamond placed phone calls to prospective property purchasers at their homes asking them to tour White Bluff; (4) Double Diamond held presentations at hotels in Hidalgo County to entice property owners to refer others to White Bluff; (5) Double Diamond representatives encouraged property owners attending the presentations to "trade-up"; (6) Double Diamond reimbursed travel expenses for property owners who brought prospective purchasers to White Bluff; and (7) property owners were not told the full extent of the additional fees and expenses until receiving invoices and notifications mailed to them at their homes.

Double Diamond specifically denied the trial plaintiffs' venue facts, with the excep-

tion of the venue facts numbered one and three, in its motion to transfer venue.[8] Double Diamond's specific denial required the trial plaintiffs to put on prima facie venue evidence supporting their choice of venue. In response, the trial plaintiffs provided their individual discovery responses, various documents pertaining to the property sale, documents relating to non-trial plaintiffs, and Double Diamond's financial information.

The plain language of the general venue statute expressly requires that all lawsuits be brought "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1); see Moveforfree.com, Inc., 288 S.W.3d at 542–43. In order to establish Hidalgo County as a proper venue for this case, each trial plaintiff must have presented evidence, which we examine independently, establishing a link between the essential elements of his or her causes of action and Hidalgo County. See Chiriboga, 96 S.W.3d at 680–81; see also TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a); Moveforfree.com, Inc., 288 S.W.3d at 542.

In their discovery responses, the trial plaintiffs provided the following information, which we have summarized below:

- Jeannette Alfonso—Alfonso received mailings from Double Diamond regarding White Bluff, but did not recall the specific dates or contents of such mailings. Likewise, she attended presentations about White Bluff in 2009 and 2010 in McAllen that discussed referrals of other potential buyers to tour White Bluff. Alfonso

purchased property at White Bluff in February of 2007.

- Eugenio Corpus—Corpus allegedly received mailings from Double Diamond regarding incentive programs at least once a year. Corpus also stated that he met with Double Diamond's representatives at least twice, but he did not recall when or where. Like Alfonso, Corpus did not link any action in Hidalgo County with alleged misrepresentations related to his purchase of property and did not specify when he had communications with Double Diamond in the context of his purchase decision.
- Fe Huevos—Huevos stated that she traveled to White Bluff in a van rented by other Hidalgo County residents. Prior to touring White Bluff, Double Diamond called her home in Hidalgo County to get her social security number to make sure "everything was fine." Huevos further stated that she received mailers only after purchasing property, and she never attended any presentations by Double Diamond. Huevos did not identify any link connecting the alleged misrepresentations to Hidalgo County and her purchase decision.
- Julito and Simonette Pepito—Julito and Simonette claimed to have received mailers from Double Diamond after their purchase decision and declined to attend a group presentation. Again, they did not identify a link between wrongful conduct in Hidalgo County and their purchase decision.
- Editha and Reynaldo Pepito—Editha and Reynaldo also did not receive any

8. Plaintiffs filed their third amended petition seven days before the venue hearing. The third amended petition alleged for the first time that the plaintiffs were Hidalgo County residents at the time the properties were purchased and that Double Diamond placed

phone calls to prospective property purchasers. Double Diamond did not specifically deny those venue facts, and they are therefore taken as true. TEX. R. CIV. P. 87.3; In re Hardwick, 426 S.W.3d 151, 157 (Tex.App.—Houston [1st Dist.] 2012, orig. proceeding).

mailings until after their purchase decision; they only attended a group presentation in Hidalgo County after their purchase was made. Yet again, Editha and Reynaldo did not identify a link between the alleged wrongful conduct and Hidalgo County.

- Elezar Nuique—Nuique received flyers from Double Diamond, but did not recall their dates. She also attended one presentation in Hidalgo County, which encouraged people to travel to White Bluff and bring others. This presentation occurred after she had already purchased property at White Bluff. Nuique offers no link between wrongful conduct and Hidalgo County.

- Cherry Somosot—Somosot received mailings from Double Diamond from 2005 forward regarding the benefits of referring others to purchase property at White Bluff. She attended one presentation in 2009 in McAllen and received calls at her home regarding the referral program for White Bluff. Again, Somosot does not identify a link between wrongful conduct and Hidalgo County.

- Nelia Vicente—Vicente received mailers "around 2006" regarding White Bluff and subsequent information regarding its referral program. She attended one presentation regarding White Bluff in Hidalgo County but does not recall the date, though this presentation occurred after her purchase. As with the others, Vicente provided no connection between the alleged misrepresentations at issue and Hidalgo County.

After reviewing the venue evidence, the appellate record, and the trial plaintiffs' briefing, we agree that the trial plaintiffs put forth evidence that Double Diamond held presentations for property owners in Hidalgo County where existing property owners were encouraged and incentivized to refer friends, family, and co-workers to White Bluff and that during those presentations, Double Diamond encouraged existing property owners to "trade-up" to other properties. Further, the trial plaintiffs put forth evidence that Double Diamond further solicited Hidalgo County residents by mail after they had purchased property at White Bluff and sent other "marketing-related correspondence" to Hidalgo County to prospective purchasers. It is undisputed that Double Diamond had contacts with Hidalgo County. The trial plaintiffs claim that our review is "limited to whether the property owners presented evidence to support a substantial connection" to Hidalgo County. However, that argument ignores the plain language of the general venue statute that expressly requires that all lawsuits be brought "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred." *Id.*; *see Moveforfree.com, Inc.*, 288 S.W.3d at 542–43. No individual trial plaintiff put forth prima facie evidence establishing a link between the essential elements of his or her causes of action and Hidalgo County. *See Chiriboga*, 96 S.W.3d at 680–81; *see also Moveforfree.com, Inc.*, 288 S.W.3d at 542. By their evidence, the trial plaintiffs have not indicated how those contacts provided all or a substantial part of the events or omissions—the alleged misrepresentations and/or failure to disclose the nature and extent of the allegedly illegal assessments when inducing the trial plaintiffs to purchase property at White Bluff—giving rise to their causes of action for violations of the DTPA, fraudulent misrepresentation, fraudulent inducement, failure to disclose, and negligent misrepresentation claims. *See* Tex.R. Civ. P. § 15.002(a)(1). Because the trial plaintiffs did not put forth prima facie evidence that

venue was appropriate in Hidalgo County pursuant to section 15.002(a)(1), we determine that venue is not maintainable in Hidalgo County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1); Tex. R. Civ. P. 87–88; *Chiriboga*, 96 S.W.3d at 680–81; *see also Moveforfree.com, Inc.*, 288 S.W.3d at 542. Having so concluded, we must next determine whether Double Diamond put forth prima facie evidence in support of Dallas County as a county of proper venue.

### 3. Prima Facie Evidence Supporting Venue in Dallas County

 In its motion to transfer venue, Double Diamond seeks to have the litigation transferred to Dallas County pursuant to civil practice and remedies code section 15.002(a)(3) because it is the county where the corporate defendants maintain their principal place of business. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(3). In support of its choice of venue, Double Diamond submitted affidavits on behalf of the corporate defendants stating that their principal offices are in Dallas County. The trial plaintiffs do not contend that venue would be improper in Dallas County; instead, they argued that venue was also proper in Hidalgo County. We agree that Double Diamond has put forth prima facie evidence supporting venue in Dallas County pursuant to section 15.002(a)(3). *See id.*

### D. Summary

Because we have determined that Hidalgo County is not a county of proper venue as to the trial plaintiffs and that Dallas County is a county of proper venue, we conclude that the trial court erred when it denied Double Diamond's motion to trans-

fer venue as to the Hidalgo County trial plaintiffs. We sustain Double Diamond's first issue.[9]

### IV. Conclusion

We reverse the judgment of the trial court and remand the case to the trial court with instructions to transfer it to Dallas County.

---

9. Because the first issue is dispositive of the appeal, we do not address the remaining issues. *See* Tex. R. App. P. 47.1.