**AFFIRMED and Opinion Filed November 30, 2023**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-00775-CV

**RUSH TRUCK CENTERS OF TEXAS, L.P. AND BLUE BIRD BODY COMPANY, Appellants**
**V.**
**SEAN SAYRE AND TORI SAYRE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EMORY SAYRE, DECEASED, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-12335**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Carlyle, and Garcia
Opinion by Justice Garcia

This interlocutory venue appeal arises from a products liability action premised on the death of a child allegedly caused by a defective school bus designed by Blue Bird Body Company ("Blue Bird") and sold by Rush Truck Centers of Texas, L.P. ("Rush"). We conclude a substantial part of the events or omissions giving rise to the claim occurred in Dallas County and affirm the trial court's order.

# I. Background

In April 2022, Emory Sayre was run over by a school bus as she exited the bus and crossed in front of it to go home. The fatal accident occurred in Parker County.

The bus was manufactured by Blue Bird and sold to Brock Independent School District ("Brock") by Rush, an independent commercial truck and bus dealer. Rush's principal place of business is in Comal County, but at the time the bus was sold, it maintained an office in Dallas County, where it was doing business as "Rush Bus Centers Dallas" or "RBC Dallas."[1]

Sean and Tori Sayre (the "Sayres") filed the underlying suit against Blue Bird, Brock, and Rush in Dallas County, but subsequently dismissed their claims against Brock. The live petition alleges that venue is proper in Dallas County pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) because all or a substantial part of the events or omissions occurred in Dallas County. The Sayres further allege that because venue is proper in Dallas County on the claims against Rush, Dallas is also the proper venue for the claims against Blue Bird.[2]

---

[1] Plaintiffs initially claimed that venue was also proper in Dallas County because Rush maintained a principal office there. But Rush relocated its Dallas facility to Arlington after the bus was sold. Accordingly, plaintiffs' second amended petition indicated that venue was no longer premised on the Rush Dallas office but was nonetheless proper in Dallas because the events or omissions giving rise to the claim occurred there.

[2] Blue Bird is a foreign corporation doing business in Texas. Section 15.005 provides that "[i]n a suit in which the plaintiff has established proper venue against a defendant, the court has venue of all defendants in all claims or actions arising out of the same transaction or occurrence, or series of transactions or

Rush and Blue Bird moved to transfer venue to Parker County or Comal County and answered subject to the motion. The Sayres responded and conducted limited venue discovery. After a hearing, the trial court denied the motion. This interlocutory appeal followed.

## II. Analysis

### A. General Venue Principles and Standard of Review

Venue may be proper under general, mandatory, or permissive venue rules. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd*., 546 S.W.3d 110, 130 (Tex. 2018). The plaintiff, by filing the lawsuit, makes the first choice of venue. *See id*.; *see also Sazy v. J.R. Birdwell Const. and Rest., LLC*, No. 05-19-01351-CV, 2021 WL 1220122, at * 3 (Tex. App.—Dallas Apr. 1, 2021, pet. denied) (mem. op.).

When the plaintiff files in a "proper" venue, "that choice of venue should be honored absent a mandatory venue statute that requires transfer." *See Perryman*, 546 S.W.3d at 130 (internal quotations omitted); *see also Kerri D. Condie, P.C. v. McLaughlin*, No. 05-18-00085-CV, 2019 WL 2353443, at *2–3 (Tex. App.—Dallas June 4, 2019, no pet.) (mem. op.). "Proper venue" is defined by statute as (1) the venue required by the mandatory provisions of Subchapter B ("Mandatory Venue") or another statute prescribing mandatory venue; or (2) if a mandatory provision does

---

occurrences." TEX. CIV. PRAC. & REM. CODE ANN. § 15.005. Appellants do not challenge the application of this provision to Blue Bird, and argue only that venue is not proper in Dallas County as to Rush.

not apply, the venue provided by . . . Subchapter A ("Definitions; General Rules") or Subchapter C ("Permissive Venue"). TEX. CIV. PRAC. & REM. CODE ANN. § 15.001(b); *see also id*. §§ 15.001–.007 ("Subchapter A. Definitions; General Rules"); *id.* §§ 15.011–.020 ("Subchapter B. Mandatory Venue"); *id.* §§ 15.031–.039 ("Subchapter C. Permissive Venue"). When a mandatory venue statute applies to a suit, the general and permissive venue rules must yield to the mandatory statute. *See id*. § 15.001(b); *see also Condie*, 2019 WL 2353443, at *2–3. Otherwise, the plaintiff's choice of venue cannot be disturbed. *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260–61 (Tex. 1994); *Sazy*, 2021 WL 1220122, at *3.

Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit. *See* TEX. R. CIV. P. 87(3)(a); *Union Pac. R.R., Co. v. Stouffer*, 420 S.W.3d 233, 239 (Tex. App.—Dallas 2013 pet. dism'd). A plaintiff satisfies this burden "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a); *Roach v. Jackson*, No. 05-20-00762-CV, 2020 WL 7258061, at *3 (Tex. App.—Dallas Dec. 10, 2020, pet. denied) (mem. op.). This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993). But if the plaintiff fails to discharge its burden, the right to choose a proper venue passes to the defendant, who must then prove that venue is proper in the defendant's

–4–

chosen county. *See In re Mo. Pac. R.R., Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding; *Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 928 (Tex. App.—Dallas 2015, pet. denied).

Interlocutory orders generally are not appealable. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). But the legislature has authorized interlocutory appeals from certain venue rulings. The exception is found in section 15.003, which governs lawsuits in which there is more than one plaintiff and provides in pertinent part:

(b) An interlocutory appeal may be taken of a trial court's determination under Subsection (a) that:

(1) a plaintiff did or did not independently establish proper venue; or

(2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)-(4).

TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)-(b).

In an interlocutory appeal of a trial court's ruling under section 15.003, the appellate court must "determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(C)(1); *Roach*, 2020 WL 7258061, at *3. Accordingly, our review is de novo. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999); *Galindo v. Garner*, No. 05-19-00061-CV, 2019 WL 2098689, at *3 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.). In conducting our review, we must

consider the entire record, including any evidence presented at the hearing. *Surgitek,* 997 S.W.2d at 603; *Roach*, 2020 WL 7258061, at *3.

**B.     Venue Provisions Applicable to This Case**

This case involves the general venue provision in section 15.002. The general Texas venue statute permits lawsuits to be brought:

> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or
>
> (4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a). Only subsection (1) is at issue here. Specifically, the Sayres allege venue is proper in Dallas County under § 15.002(a)(1) because a substantial part of the events or omissions giving rise to their claims against Rush occurred in Dallas County.

Our inquiry concerning the applicability of § 15.002(a)(1) involves identifying the claims and then determining whether all of a substantial part of the events or omissions giving rise to those claims occurred in Dallas County. *See Tex. Windstorm Ins. Ass'n v. Boyle*, No. 01-13-00874-CV, 2014 WL 527574, at *3 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.). We begin with the claims asserted.

## C. The Claims in the Underlying Suit.

The Sayres brought claims for negligence and strict liability. Because Rush is a nonmanufacturing seller, it cannot be held liable for a product defect unless the Sayres establish that an exception under section 82.003 applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 ("Liability of Nonmanufacturing Sellers"); *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 109 (Tex. 2021) ("Chapter 82 is a liability-restricting statute."); *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex. 2006) ("The purpose of section 82.002 is to protect innocent sellers who are drawn into products liability litigation solely because of the vicarious nature of that liability by assigning responsibility for the burden of the litigation to product manufacturers."). "[N]on-manufacturing sellers are not liable for product defects unless one of the enumerated exceptions" in § 82.003 applies. *McMillan*, 625 S.W.3d at 109.

The Sayres allege that Rush is liable pursuant to the exceptions set forth in sections 82.003(a)(6) and 82.003(a)(4). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 82.003(a)(4), (6). But the Sayres told the trial court at the venue hearing that their claim under section six was sufficient to demonstrate a substantial connection to Dallas County. Our inquiry is therefore limited to the section 82.003(a)(6) exception.

The essential elements of a claim under section 82.003(a)(6) include: that (1) "the seller actually knew of a defect in the product" (2) "at the time the seller supplied the [product]" and (3) "the claimant's harm resulted from the defect." TEX.

CIV. PRAC. & REM. CODE ANN. §§ 82.003(a)(6). There is no dispute that the injury occurred in Parker County. The parties disagree, however, about whether the facts demonstrate that Rush supplied the bus in Dallas County and whether Rush had knowledge of the alleged defect when the bus was supplied.

**D.  Did a Substantial Part of the Events or Omissions Giving Rise to the Claim Occur in Dallas County?**

### *Supplying the Bus*

Rush argues the bus was "supplied" in Parker County because the Rush employee who negotiated the initial sales proposal worked from home in Parker County and the bus was ultimately delivered to Parker County. According to Rush, all remaining activities that occurred in Dallas County are insignificant because they are ministerial, clerical tasks only tangentially related to the sale. The Sayres respond that "[b]ookends are meaningless without the books," and negotiation and final delivery of the bus are not dispositive or viewed in isolation. Rather, they contend that determining where the bus was supplied also includes all actions that made negotiation and final delivery meaningful.

The evidence shows that the bus was ordered, delivered, inspected, titled, billed, and paid for out of Rush's RBC-Dallas facility, which at the time of sale was located on Irving Boulevard in Dallas County. Specifically, a "Customer Proposal Letter" on the stationary of "Rush Bus Center—Dallas TX," listing its Irving Boulevard address, shows the Rush proposal to Brock regarding the make and model

of the Blue Bird bus that Brock eventually purchased. John Rubenkoenig, the Rush employee who works from home in Parker County, signed the proposal as the "Sales Representative" for "Rush Bus Center Dallas." Along with that proposal, Rush included a list of "Optional Items" that it proposed for the bus. Cheryl Bell, an employee in the Dallas office, typed the proposal and sent it to Blue Bird for a pricing quote. After Rubenkoenig's supervisor in Comal County determined Rush's mark-up and final quote price, Bell prepared the paperwork by inputting information into Blue Bird's electronic quotation system. Bell then sent the paperwork to Rubenkoenig to forward to Brock. Once Brock agreed to the final terms, Bell, working from the Dallas location, placed the order for the bus. The sales order Brock accepted lists "Rush Bus Center Dallas" as the "Dealer."

Following the order, the bus was delivered to Rush's Dallas facility, where Rush assumed possession and control over it. A bill of lading shows the bus was delivered to "Rush Bus Center," and a "Delivery Release" was signed upon the vehicle's arrival at the "Rush Bus Center" in Dallas. A document entitled "New Bus AVO" reflects that Rush performed a "pre-delivery inspection" at the Rush Bus Center in Dallas. Rush also placed decals and lettering on the bus and installed optional equipment in Dallas. In addition, the record includes a receipt for a vehicle inspection conducted by the Texas Department of Public Safety at the Dallas facility.

Other documents show that the vehicle's registration was issued by the "Rush Bus Center" in "Dallas," and Brock's title application reflects that its previous owner was "Rush Truck Centers of Texas LP. Dba Rush Bus Centers Dallas, TX."

We disagree with Rush's characterization of these components of the transaction as merely clerical. To the contrary, these actions were key components of and integral to Brock's transaction with Rush for the sale of the bus. And while some of the Dallas actions involved clerical work, those actions are nonetheless relevant to determining whether the claim has substantial connection to the plaintiffs' chosen venue. *See Scott Law Offices v. Quincy Holdings, LLC,* No. 01-19-00739-CV, 2020 WL 4006438, at *3 (Tex. App.—Houston [1st Dist.] Jul. 16, 2020, no pet.) (considering "administrative tasks" such as preparation of reports, invoice and billing, and follow-up communications).

Rush argues that contract cases considering administrative tasks in a venue determination are not applicable here because this case involves torts rather than contract. In support of its argument, Rush relies on *Double Diamond-Delaware, Inc. v. Alfonso*, 487 S.W.3d 265, 274–75 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) and *Honeywell Int'l Inc. v. Davis*, No. 01-19-00013-CV, 2020 WL 4873562, at *6–8 (Tex. App.—Houston [1st Dist.] Aug. 20, 2020, no pet.). These tort cases declining to consider administrative tasks in the venue analysis do not advance the argument.

Regardless of whether they involve contract or tort, none of the cases considering administrative tasks in a venue analysis hold that the relevance of the tasks turns on whether the plaintiff's claims sound in contract or in tort. *See Scott*, 2020 WL 4006438, at *3, *Double Diamond*, 487 S.W.3d at 274–75; *Honeywell*, 2020 WL 4873562, at *6–8. Instead, the relevance of administrative tasks turns on whether those tasks assist in proving the elements of the plaintiff's claim. *See Scott*, 2020 WL 4006438, at *5 (tasks concerned where contract was made, performed, and breached); *Honeywell*, 2020 WL 4873562, at *8 (rejecting tasks because they did not establish a link between claims asserted and plaintiff's chosen venue); *Double Diamond*, 487 S.W.3d at 275 (no link between tasks and essential elements of claim).

In this instance, there is a link between the evidence Rush deems irrelevant and the claims asserted in the litigation. The formation and execution of the agreement are central to establishing the manner in which Rush supplied the bus to Brock. Accordingly, we include the evidence of tasks performed in Dallas in our venue analysis. Those facts demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

Nonetheless, Rush insists that Rubenkoenig's negotiation of the initial proposal from his home in Parker County is determinative of where the bus was "supplied."[3] We disagree.

Rush relies on *Casas v. The Tire Corral, Inc.*, No. M-04-123, 2005 WL 6773889, at *6 (S.D. Tex. 2005) and a similar federal district court case to argue that an item is "supplied" under section 82.003(a)(6) "at the time of its original sale," which Rush then conflates with an initial point of contact. *Casas* does not support this interpretation.

In *Casas,* the court used the term "initial point of sale" to describe the sale itself and to distinguish events occurring after the sale. To this end, the court held:

> Plaintiffs claim that . . . knowledge of the hold in the tire at the time of the post-sale inspection triggers the exception under §82.006(a)(6) . . . American Eagle, however, argues that the term "supplied" means sold for cash or credit, rented, leased, or traded . . . but not "returned to the owner after a service call way later than the purchase." The court agrees that confining the application of the term to the initial point of sale comports with the clear intent of the statute.

*Id.* The court further noted that there was no evidence of knowledge of a defect "at the time of sale." *Id.*

Viewed in the appropriate context, the *Casas* case does not suggest that the "initial point of sale" means anything other than the sale, and certainly does not hold that the initial point of sale includes a preliminary proposal for a sale such as the one

---

[3] The parties advance different conclusions about whether Rubenkoenig's deposition testimony establishes that Rush considered him an employee of the Dallas facility. Regardless, there is no dispute that he signed the preliminary sales proposal as a sales representative for "Rush Bus Center Dallas."

prepared by Rubenkoenig. A "sale" involves the passing of title from the seller to a buyer for a price." TEX. BUS. & COM. CODE ANN. § 2.106(a). Rubenkoenig's initial proposal does not comport with this definition.

Indeed, there were several steps following the Rubenkoenig initial proposal before the transaction was consummated as a sale. The proposal was forwarded to the Dallas facility for processing, then to Blue Bird, then to the manager who determined the mark-up before returning it to Rubenkoenig to present to Brock as a final offer to sell. The final offer from Rush Bus Center Dallas that was subsequently accepted by Brock was "the complete and exclusive statement of the terms of the agreement between the parties." The sale was complete on the day RBC-Dallas transferred the title to Brock.

Moreover, neither the cases Rush cites, nor any Texas authority hold that the term "supplied" is synonymous with "sale." If the Legislature intended that the section 82.006(a)(6) exception required a sale, it would have said so. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432,439 (Tex. 2011) (we presume Legislature chose statutory language with care, purposefully choosing each word and purposefully omitting words not chosen). Instead, the statute includes a broader, *albeit* undefined, requirement that a product be "supplied." This suggests a more comprehensive inquiry than the narrow definition Rush seeks to advance.

There is no question that the person supplying the product must be a seller. The section 82.003(a)(6) exception requires that "the **seller** actually knew of a defect

in the product . . . at the time the **seller** supplied the [product]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(6) (emphasis added). A seller is defined as "a person who is engaged in the business of distributing or otherwise placing for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(3). Thus, reading 82.003(a)(6) together with the statutory definition of seller suggests that supplying a product could but does necessarily involve a sale.

Alternatively, Rush argues that "supply" means something that is "made available for use." Because the broad undefined term "supply" together with the statutory definition of seller suggests that the manner of supplying a product will differ from case to case, we do not undertake to determine whether the definition Rush suggests applies in every case. But under the facts of this case, agree that it is a reasonable construction. Nonetheless, we disagree that making the bus available for use only includes final delivery of the bus. While the bus was ultimately delivered to Parker County, the delivery originated in Dallas County and there was an entire sequence of events involved in making the bus available. The record reflects that a substantial part of those events occurred in Dallas County.

*Knowledge of the Alleged Defect*

The alleged defect in this case is the absence of a crossing gate or other technologies to avoid risk to children in the "danger zone," the area directly in front of the bus. Rush argues the venue facts do not establish that Rubenkoenig had

knowledge of an alleged defect when he negotiated the sales proposal from his Parker County home, and the venue evidence does not establish that Rubenkoenig was an employee of the Dallas Rush location for purposes of imputing his knowledge to Rush.

But we need not resolve whether Rubenkoenig had knowledge of the alleged defect for purposes of this determination.[4] Rush is alleged to be the non-manufacturing seller, not Rubenkoenig, and the live petition asserts that Rush had knowledge of the alleged defect. Specifically, the second amended petition alleges:

> The [bus] was unreasonably dangerous by virtue of the design and/or manufacturing defects related to its pedestrian detection/avoidance systems. Defendant [Rush] knew of these defects at the time it sold the school bus to Brock ISD, and the defective school bus was a proximate cause of Emory Sayre's death and Plaintiffs' resulting damages.

> The [bus] contained an inherent risk of harm which could arise from the intended or reasonably anticipated use of the bus. Defendant [Rush] knew of the risk of harm at the time the [bus] was sold. Defects in the warnings and/or instructions rendered the school bus defective and unreasonably dangerous.

> Defendant [Rush] knew of the defects to the [bus] at the time it supplied the bus to Brock ISD. Specifically, Defendant [Rush] tracks recommendations issued by the NTSB and NHTSA regarding the products it sells and knew about the 2018 recommendation that school buses be equipped with pedestrian detection/avoidance systems to prevent danger zone accidents, injuries and deaths. Further, by 2016, Defendant [Rush]'s large inventory included buses that were equipped with pedestrian detection/avoidance systems. Since 2016, Defendant [Rush] sold and serviced buses equipped these systems, which consist of multiple cameras mounted around the exterior of bus and/or crossing gates, before selling and servicing the [bus] without any such system in

---

[4] Moreover, regardless of the office with which he was affiliated, there is no dispute that he was a Rush employee.

–15–

2020. Thus, Defendant [Rush] knew when it issued a proposal to Brock ISD to sell it the [bus] and when it delivered the [bus] that it lacked a critical safety feature to address a known hazard, which rendered it unreasonably dangerous and defective.

Rush never denied these allegations, so they are to be "taken as true" for purposes of establishing venue in Dallas County. *See* TEX. R. CIV. P. 87.3(a); *Arbaiza v. Chicas Locas, Inc.*, No. 05-23-00759-CV, 2023 WL 7144640, at *1 (Tex. App.—Dallas Oct. 31, 2023, no pet. h.) (mem. op.) (all venue facts, when properly pleaded, shall be taken as true unless specifically denied). Therefore, for purposes of venue, the "knowledge of the defect" prong of the section 82.003(6) exception has been met.

Because the record reflects that a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, the trial court's denial of the motion was not erroneous. We resolve Rush's issue against it and affirm the trial court's order.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

230775F.P05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RUSH TRUCK CENTERS OF
TEXAS, L.P. AND BLUE BIRD
BODY COMPANY, Appellants

No. 05-23-00775-CV      V.

SEAN SAYRE AND TORI SAYRE,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF EMORY SAYRE,
DECEASED, Appellees

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-12335.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Carlyle
participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellee SEAN SAYRE AND TORI SAYRE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EMORY SAYRE, DECEASED recover their costs of this appeal from appellant RUSH TRUCK CENTERS OF TEXAS, L.P. AND BLUE BIRD BODY COMPANY.

Judgment entered this 30th day of November 2023.